People of the State of Illinois, Plaintiff-Appellee, v. Robert G. Brown, Defendant-Appellant.

Gen. No. 65–33.

Second District.

February 25, 1966.

Richard C. Christian and Charles S. Wilson, III, both of Waukegan, for appellant.

Bruno W. Stanczak, State's Attorney, and Jack Hoogasian, Assistant State's Attorney, both of Waukegan, for appellee.

ALLOY, J.

Robert G. Brown, Defendant, appealed to the Supreme Court of this State from a conviction and sentence for the crime of embezzlement. The cause was transferred to this court by the Supreme Court.

Defendant was indicted on September 18, 1961, by the Grand Jury for the crime of Embezzlement by a public officer. He was found guilty by a jury and was sentenced to a term of two to five years in the State penitentiary. The indictment was in five counts with each count alleging in differing terminology that defendant was an elected Township official of the Township of Ela; that is, that he was a Justice of the Peace. The indictment states that on the 15th day of September, 1960, while defendant was an elected Justice of the Peace of the said Township he received in his possession $2,857.85 which was to be delivered to the County Treasurer of the County of Lake, but that defendant unlawfully, feloniously and fraudulently embezzled the said sum in possession of said Township officer by virtue of his Township office and fraudulently converted it to his own use without the consent of the County of Lake contrary to the statute in such case made and provided. Defendant filed a written motion to quash the indictment and each count thereof which motion was overruled by the Trial Court.

19

On appeal in this court, defendant contends: (1) that the court erred in denying his motion to quash the indictment, (2) that the court erred in allowing certain instructions to be given on part of the plaintiff, (3) that the court erred in failing to grant defendant's motion for a judgment notwithstanding the verdict because there was a variance between proof and the charge contained in the indictment, (4) that the court abused its discretion in denying defendant's motions for a bill of particulars and to bar certain witnesses from testifying, in failing to make the State elect upon which count it was going to proceed, and in failing to grant a mistrial on motion of defendant, and (5) that the court abused its discretion in failing to declare a hung jury after the court had indicated a hung jury would be declared and that the court coerced the jury and hastened the reaching of a verdict, and (6) that defendant was not proven guilty beyond a reasonable doubt.

Defendant was a resident of Lake Zurich, Illinois, and owned a gas station in that community. He was elected as a Justice of the Peace and would have been a Justice of the Peace until April of 1961. He was appointed a Supervisor for Lake County on September 9, 1960, and after that was no longer a Justice of the Peace. For the purpose of holding court, defendant had rented a private office in the Village of Lake Zurich, Illinois, and paid rent for the office out of his earnings as Justice of the Peace. He had an arrangement with a certain individual by the terms of which this individual would perform duties for him in exchange for office space in the office of defendant. No salary was paid to that individual but all utilities were paid for by defendant. During the years 1957 through 1960, defendant would keep dockets, sheets, and books but at the time of trial he did not know their whereabouts. He heard only traffic violation cases in his capacity of Justice of the Peace and generally these cases were heard on Saturday mornings. During the

period defendant collected monies from traffic violators he testified he would deposit all of his money from his office in the Lake Zurich bank under a bank account entitled "Robert G. Brown, Justice of the Peace." He contends that he made all of the reports required by law to the State's Attorney's office and to the Secretary of State's office as well as to the State Police and to the Department of Conservation. He did not recall personally the names of any individual cases of traffic violators and stated that he was not paid a fee for his office as Justice of the Peace, but that his sole remuneration was collection of costs. He denied embezzling or taking any money from Lake County during the time he was in office as Justice of the Peace.

He testified that at certain times money was paid into his office when he was not present; that the violators would sometimes pay fines at his gas station and sometimes at his home. The other individual who occupied his office would accept payment for fines and issue receipts when defendant was not present. Defendant gave the other individual authority to sign receipts for him. He states, however, that he never gave this individual authority to put his seal on the receipts. Defendant had offered to pay the State's Attorney any shortage if it could be shown that one existed. The other occupant of the office who helped defendant in accepting payment of fees testified that he worked as a part-time clerk for defendant and had no other duties except, when fines were levied, to take the money. He stated he gave the persons who paid the fines a receipt in return for the money and gave them a receipt as instructed by defendant. After the money was collected, he testified, he put it in an envelope and would put the number of the traffic ticket and the total amount in a desk. He stated there were two desks and he put the money in either the desk of Robert Brown or his own desk. He stated he did not know what happened to the money after it was placed

in defendant Brown's desk. He did not keep copies of the receipts and he had nothing to do with sending reports to the proper officials other than to notarize the signature of defendant Brown. He identified certain exhibits introduced by the People having his name on the bottom of the receipt and stated that he did not know what he did with the envelope with the money in it because in certain instances he either put it in his desk or defendant Brown's desk. He did not know how much of the amount paid reflected the fine and how much reflected costs. He testified specifically that his name appeared on 54 traffic tickets introduced as People's Exhibits and that he signed the traffic tickets in his capacity as clerk. All this work was done in exchange for desk space on defendant's rented premises. No one else worked in the office during that time except Defendant Brown and the individual referred to.

The State produced 36 witnesses at the trial who had pleaded guilty to traffic violations and paid various amounts of fines and costs to defendant Brown or to the other occupant of his office. Certain of the individuals received receipts from the clerk who shared desk space in defendant Brown's rented premises and certain of the other witnesses testified that they paid by check. The checks were all deposited in the account of Robert Brown as Justice of the Peace. In a number of instances, People's Exhibits covered traffic tickets which had been forwarded to the Secretary of State's office wherein individuals stated they had paid the money to defendant Brown, either by cash or check. The net effect of the evidence was to show that there was a difference in the amount that defendant reported and the amount that individuals testified they had paid to defendant Brown.

■ Defendant was indicted under the provisions of section 214, chapter 38, Illinois Revised Statutes (1959 Ill Rev Stats, c 38, § 214). Defendant-Appellant contends that inasmuch as the indictment charges embezzlement

as a Justice of the Peace, the indictment should have been under the provisions of section 213 of said chapter 38. Such section (1959 Ill Rev Stats, c 38, § 213), covers embezzlement by attorneys, justices of the peace, constables and other officers authorized by law to collect money. Under section 214 the penalty is imprisonment in the penitentiary of not less than one year nor more than 15 years. Under section 213, it is provided that if such persons shall fail or refuse to pay over any money so collected by him, less his proper charges, on demand by the person entitled to receive the same, he shall be fined not exceeding double the amount retained by him or confined in the County Jail not exceeding one year or both and be removed from office and thereafter be ineligible to be elected or appointed to any office under the Constitution or laws of this State. Defendant seriously contends that section 213 exclusively covered the subject of embezzlement by Justices of the Peace. The courts of this State have determined that a Justice of the Peace is an elected Township official under the laws of this State, and conviction under section 214 pursuant to which the defendant in this case was indicted, has been upheld by the Supreme Court of this State in People v. Hagel, 32 Ill2d 413, 206 NE2d 699. In that case, the court specifically determined that a demand for funds was not an essential element of embezzlement under that section. The indictment charging defendant with embezzlement under section 214 was proper and the action of the trial court in denying the motion to quash was justified.

██ The People's instructions in one instance in referring to "reasonable doubt" specified that "the reasonable doubt that the jury is permitted to entertain must be as to the guilt of the accused on the whole evidence, and not as to any particular fact in the case not material in the case." Under the facts in this case, such instruction would not constitute reversible error (People

v. Rogers, 324 Ill 224, 234, 235, 154 NE 909). In another instruction, reference to reasonable doubt followed language closely akin to that in People v. Lucas, 244 Ill 603, 615, 91 NE 651. The instruction told the jury that reasonable doubt must not be based upon a mere possibility that defendant may be innocent but that it may be possible that defendant is innocent and yet at the same time there may be no reasonable doubt that he is guilty. While this instruction is a very confusing and undesirable type of instruction under any set of facts, we cannot say that the giving of the instruction in the instant case constituted reversible error.

 The indictment in this case charges that defendant embezzled $2,857.85. The total amount actually proven fell considerably short of the figure alleged in the indictment. Defendant contends that since there is a definite material variance in the indictment and proof, the conviction should be reversed. The record shows, however, that for the years 1959 and 1960, prior to the qualification of defendant as a supervisor, the charge of embezzlement by a public officer was adequately proven and established by evidence received in the trial court. As stated in People v. Taylor, 391 Ill 11, 14, 62 NE2d 683, a slight variance from the date charged in the indictment is immaterial. Similarly, in cases of embezzlement there is no need for a special finding of value of the fraudulently converted property (People v. Chisholm, 370 Ill 634, 635, 636, 19 NE2d 578).

 It likewise appears from the record that the indictment sufficiently informed defendant Brown of the crime of which he was charged so as to enable him to prepare his defense. In view of the fact that no injury is shown by virtue of the failure to furnish a bill of particulars, there is no showing that the court abused its discretion when denying such motion (People v. Gray, 251 Ill 431, 437, 96 NE 268).

24

■ Similarly, in the case before us there is no showing of any surprise by virtue of the fact that the court permitted witnesses to testify whose names had not been furnished to defendant. As stated in People v. Weisberg, 396 Ill 412, 420, 71 NE2d 671, the statute was adopted to prevent surprise and give defendant an opportunity to combat false testimony. The fact that names were withheld until the beginning of trial in itself would not be sufficient to reverse the judgment. Where defendant did not ask for a continuance nor do anything else to show his prejudice by failure to receive the names earlier, this court on review could not say that the trial court under such set of facts abused its discretion (People v. Tomaszewski, 406 Ill 346, 354, 94 NE2d 154).

■ On the issue as to whether the People were required to elect upon which count of the indictment to proceed, it is noted that defendant Brown was charged in a five-count indictment with the offense of embezzlement under the section of the Criminal Code referred to in the course of this opinion. While an indictment may not charge separate and distinct offenses, totally disconnected from each other, if it is obvious that they grow out of the same act or transaction, separate and distinct offenses may be charged in the same indictment and stated in varying ways in as many counts as may be required. A prosecutor is required to elect upon which count of an indictment he will rely for conviction only in such cases where the offenses charged in the different counts are actually distinct from one another but rise out of the same transaction (People v. Wilfong, 19 Ill2d 406, 408, 168 NE2d 726). In this case, all counts of the indictment arose from the same series of transactions involving defendant and were merely set forth in alternative allegations in accordance with the provisions of the section relating to embezzlement under which the conviction was obtained. There was no reversible error

in such procedure. On the record as a whole, where questions of fact are for a jury to determine and a verdict of guilty has been returned, it would not be disturbed unless it is palpably contrary to the weight of the evidence or so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendant's guilt (People v. Tomaszewski, supra). On the basis of the record before us, this court on review would not be justified in reversing the jury verdict in the state of the record as made in this cause.

██ The problem of major concern on review arises from circumstances which developed after the jury had retired to consider the verdict in this case. The trial of this cause had been in progress for eight days when the jury retired at 4:50 p. m. on October 18, 1962. At midnight, in open court, the Trial Judge requested the bailiff to inquire whether the jury had reached a verdict. The bailiff returned and stated a verdict had not been reached, and the trial court then continued the matter until 12:20 a. m. after discussion between attorneys and the court concerning an instruction on deadlocked jurors and a denial of a motion by the People that the jury be locked in a hotel for the evening. The court continued the matter until 1:00 a. m. stating to counsel only "it will be a hung jury at that time declared." At 1:00 a. m. in open court, the jury was asked by the court:

"Mr. Foreman, do you feel that if you are given more time that you and the Jury would reach a verdict, sir?"

The Foreman: "That we may reach one, yes."

The Court: "You will?"

The Foreman: "That we may, yes, sir."

The Court: "I am asking you, will you reach a verdict if given more time, sir, do you feel?"

26

The Foreman: "Well, the possibility is definitely there. I wouldn't at this time say we will."

The Court: "All right. As far as we are concerned, you are to take all the time that you care to. There is a point to where the Court feels that it doesn't want to impose upon the jury and have them staying out so long. Therefore, the Court feels that if you feel you can reach a verdict, we are willing to await that decision. But, on the other hand if you feel that you can not reach a verdict, we would like to know. Are you able to answer that?"

The Foreman: "We would like to have an evening of rest and come back, and probably we will with clear minds at this point."

The Court also thereafter stated: "Do you think it would be of some help to you if you were to return to the jury room again?"

The Foreman: "Yes."

The Court: "All right. You may return to the jury room. Thank you."

Thereupon the jury returned to the jury room and the court indicated that it would wait a reasonable time.

At 1:32 a. m. or approximately 20 minutes later, the jury returned and presented its verdict of guilty. Defendant strenuously contends that the court misled the defendant and State's Attorney in declaring a hung jury at 1:00 o'clock and failing to carry out this order. It is further contended that the court should have made arrangements to house the jury for the night, especially when the Foreman indicated that they were tired. Defendant also contends that the failure of the court to uphold its "hung jury" determination at 1:00 a. m. and sending the jury back to consider the complex case at

27

that hour was highly prejudicial and that the jury was hastened into a verdict by action of the court (People v. Golub, 333 Ill 554, 561, 165 NE 196).

In the instant case, the comments of the Trial Judge neither directly nor by implication indicated the jury should reach any particular conclusion. We cannot read into the remarks of the court anything other than a specific statement by the court, that as far as the court is concerned the jury is to take all the time it cares to. The court specifically stated that it did not want to impose upon the jury and have them staying out so long and that if the jury feel they could not reach a verdict, the court would simply want to know. Under the circumstances, we do not believe that the court hastened a verdict or that defendant was prejudiced by the action of the Trial Court in this regard (People v. Golub, supra; People v. Derrico, 409 Ill 453, 464, 100 NE2d 607; People v. Duszkewycz, 27 Ill2d 257, 262, 263, 189 NE2d 299; Starac v. Corsale, 22 Ill App2d 142, 159 NE2d 384).

While this trial was not completely free from error, we feel, under the record, that there was no reversible error and, accordingly, the conviction and sentence of Defendant will be affirmed.

Affirmed.

CORYN, P. J. and STOUDER, J., concur.