The People of the State of Illinois, Plaintiff-Appellee, *v.* Charles R. Adams *et al.*, Defendants-Appellants.

(No. 11541;

Fourth District—November 1, 1972.

James R. Streicker, of Defender Project, of Chicago, for appellants.

Richard A. Hollis, State's Attorney, of Springfield, (D. Bradley Blodgett, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

The defendants-appellants David Adams, Charles Adams and Sandra Kemp were jointly indicted for the crime of burglary. On July 22, 1970, the jury returned verdicts of guilty as to all three of the defendants. David Adams was sentenced for an indeterminate term of 5 to 10 years to run consecutively with a 1 to 5 sentence for burglary previously imposed in Winnebago County, and which he was serving at the time of the imposition of the instant sentence. The defendants Charles Adams and Sandra Kemp were placed on probation for a period of 3 years. All defendants appeal.

At approximately 1:55 A.M., on March 16, 1970, Officer Harry Stoutamyer of the Springfield Police Department, observed a white Pontiac in the parking lot of the Avenue Food Shop. The car was parked, the lights were off and the motor not running. The Avenue Food Shop was closed as were all other stores in the area. Stoutamyer noticed three persons inside the car who dropped down apparently to avoid being seen. The car was parked less than 50 yards from the rest room window of Jack Harman's Service Station which was also closed. Stoutamyer approached the car and questioned the defendants, Charles Adams and Sandra Kemp, as well as the third occupant, who was a juvenile. Defendant David Adams was not present. The defendant Charles Adams could not account for the ownership of the automobile and Stoutamyer escorted them to the police station, intending to issue a citation for the use of fictitious license plates. Sometime later the defendant, David Adams, came into the police station and inquired about Charles, who is his brother. Stoutamyer testified that David stated that he was on his way to Dino's Lounge when he saw his car, driven by Charles, being escorted by police officers, and that he (David) had arrived at the police station in a taxicab which he took from Dino's Lounge. Stoutamyer also observed that David Adams' pockets were bulging with change and this was noticed when Adams made some change for another officer at the station house. A check was made with the cab company and Stoutamyer then ascertained that David Adams had been picked up, not at Dino's Lounge, but at a location about a block and a half from the service station. The cab driver Shaw came to the station and identified David Adams. During David Adams' presence in the police station, the fact that Jack Harman's Service Station had been burglarized became known to Stoutamyer and, being possessed of the information above recited, he placed the three defendants under arrest.

Officers Barnett and Lamkin testified that they discovered the burglary of the Service Station, that a window ledge had been pried and glass broken out of a rest room window. On the floor inside the service station, was a broken cashew nut machine. Barnett also found part of a broken button on the window ledge. Jack Harman, the owner of the Service Station, testified that $271.30 was taken in the burglary and that David Adams was a former employee. At this juncture, defendant David Adams moved to suppress the introduction of physical evidence, consisting of defendant's trousers, a pair of shoes and also objected to fingerprint evidence. The basis of the objection was that the physical items were seized by the police at the police station following an illegal arrest. The objection was overruled and the evidence admitted.

Two F.B.I. agents then testified, over defendant David Adams' objec-

tion. In the left rear pocket of the trousers sent to the Bureau for examination, was a fragment of a button to which was attached some fragments of thread. The button fragment found in the left rear pocket of the trousers was a part of the button fragment found on the window ledge of the Service Station. The agents also testified that the partial button found on the window ledge had blue fibers attached to it which matched the fibers in David Adams' trousers. The agents also testified that fingerprints found on the broken cashew machine were those of David Adams.

■■■ There are four assignments of error to be considered.

(1) Was the indictment fatally defective because it failed to allege ownership of the premises which were burglarized? The indictment charged:

> "Charles R. Adams, David L. Adams and Sandra Kemp committed the offense of burglary in that they knowingly and without authority entered into a building of Jack Harman's Standard Service, located at 926 South Grand West, with the intent to commit therein a theft."

Prior to trial the People filed a motion to cure "formal defects" in the indictment by striking the language "they knowingly and without authority entered into a building of Jack Harman's Standard Service" and to substitute the following language, "they knowingly and without authority entered into a building of Jack Harman's." The motion was allowed without objection by the defendants, nor did defendants file a motion to quash the indictment. It is not necessary to allege ownership of the building which has been burglarized. "* * * an indictment alleging occupancy or possession of the burglarized premises in a named person is sufficient." (*People v. Whittaker,* 45 Ill.2d 491, 259 N.E.2d 787.) In *People v. Viar,* 131 Ill.App.2d 983, 268 N.S.2d 872, we held that an information which charged that the defendant "* * * without authority, knowingly entered into a building of Quincy Council of Churches doing business as Last Chapter Coffee House, * * *" to be an adequate allegation of the legal entity whose property was invaded. The language of the present indictment is, in form, essentially the same as that held to be sufficient in *Viar* and we hold it to be sufficient here. The language of the indictment prior to amendment constituted an adequate allegation and the amendment did not, therefore, remedy a substantive defect, in violation of Ill. Rev. Stat. 1969, ch. 38, sec. 111—5, which permits amendments of indictments only insofar as they pertain to formal defects.

■■ (2) The defendants Charles Adams and Sandra Kemp were held accountable for burglary and theft under the provisions of Ill. Rev. Stat. 1969, ch. 38, secs. 5—1, 5—2. In order to sustain a conviction under the

statute the evidence must establish beyond a reasonable doubt, that Charles Adams and Sandra Kemp "(1) * * * solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offenses; (2) that this participation must have taken place either before or during the commission of the offenses; and (3) that it must have been with the concurrent, specific intent to promote or facilitate the commission of the offenses * * *". (*People v. Tillman*, 130 Ill.App. 2d 743, 265 N.E.2d 904.) The trial judge, in denying defendant's motion for a directed verdict at the close of the People's case stated that at the close of all the evidence he would give serious consideration to entering a judgment notwithstanding the verdict in the event that the jury returned verdicts of guilty as to these defendants. The evidence as to Charles Adams and Sandra Kemp establishes only that they had to come to Springfield with David Adams in his car and that they were sitting in his car, in a parking lot near the Service Station at 2:00 A.M., which Service Station was discovered at 3:00 A.M., to have been burglarized and that their statements were, in some aspects, conflicting. This evidence falls far short of establishing, beyond a reasonable doubt, any one (much less all) of the three propositions required by the statute set forth in *Tillman, supra*. Accordingly, the convictions of Charles Adams and Sandra Kemp must be reversed.

(3) Defendant David Adams urges that the trial court erred in failing to suppress the physical evidence seized from his person at the police station following his arrest. The trial court heard the evidence during the Motion to Suppress and entered a written order containing findings of fact and conclusions of law and held that Officer Stoutamyer had probable cause to believe that David Adams had committed the burglary in question. It would unduly prolong this opinion to recite the detailed findings of fact made by the trial judge, we note that they are amply supported by the record.

■■■ Stoutamyer was in possession of the following information at the time of the arrest of David Adams: The burglary had been committed at Jack Harman's Service Station between 12 midnight and 3:00 A.M., in the morning of March 16, 1970. Defendant's Pontiac automobile had been discovered parked within 50 yards of the burglarized premises. The car was that of the defendant, David Adams, and it bore fictitious plates. The occupants of the car and David Adams were not residents of the City of Springfield and Charles Adams and Kemp told conflicting stories concerning their presence in the parking lot. David Adams had been picked up within one block and a half of the scene of the burglary by the cab driver who identified him, and the defendant had apparently lied as to his whereabouts immediately prior to being

brought to the police station by the cab driver. The defendant's pockets were bulging with change and his pants were marked with grease spots. There was no reasonable explanation for the car being parked in the parking lot since all of the stores in the area were closed. "* * * the test of probable cause is whether a reasonable and prudent man in possession of the knowledge that has come to the arresting officer would believe the person to be arrested is guilty of the crime; that it is something less than evidence that would result in conviction * * * that it is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act." (*People v. Macias,* 39 Ill.2d 208, 213, 234 N.E.2d 783.) The standard set forth in *Macias, supra,* is met here. There was probable cause for the arrest and the trial court's ruling on the motion to suppress the evidence was correct.

(4) Defendant David Adams contends that it was error for the trial court to allow the F.B.I. agents, Gressens and Scholberg, to testify.

On July 21, 1970, the first day of trial, the State sought to amend its list of witnesses to include the two F.B.I. agents. The defendant David Adams objected, arguing that he had only received the amendment that morning and that he had never received a list of the items seized by the police although he had made such a motion. However, the People had filed an inventory in the cause on April 21, 1970, setting forth the fact that David Adams' shoes and trousers had been seized from the defendant together with United States Currency totaling $99.90. Both Gressens and Scholberg, the record discloses, had been made available to counsel for the defendant and had been interviewed by counsel and the F.B.I. reports concerning the examination of the physical evidence had been delivered to defendant's counsel on the morning of the trial. Defendant's counsel also objected to the testimony of *any* witness on the grounds that he had not had adequate time to prepare.

Counsel for David Adams requested that the Court, on its own motion, grant a continuance in order that he would have further time for preparation. The Court observed that counsel had previously argued that, in his opinion, defendant's right to trial within the 120-day rule was in question and counsel candidly stated that he would not move for continuance on behalf of his client and thus waive any rights in connection with the rule. The Court's refusal to order a continuance on its own motion, under these circumstances, was not error. It is fairly inferrable from the record that a motion for continuance, if made, would have been granted. Counsel had interviewed the two F.B.I. agents, their reports had been furnished to him, he did not ask for a continuance, he did not request the Court to recess the trial following their testimony, he cross-

examined the witnesses thoroughly and extensively. The trial judge, may, in his discretion permit unlisted witnesses to testify, *People v. Richards,* 120 Ill.App.2d 313, 256 N.E.2d 475; and his ruling will not be disturbed unless there is a showing of abuse of that discretion. (*People v. Graves* 6 Ill.App.3d 612, 285 N.E.2d 236.) If, in fact, defendant was surprised by the evidence which had been revealed to him in the F.B.I. reports and during his interview with the witnesses he could have moved for a continuance, and this he not only failed, but refused, to do. Defendant's claim of surprise and prejudice must be weighed in the context of his refusal to seek a continuance. Under these circumstances we cannot say that the trial judge abused his discretion in permitting the testimony of the witnesses. We also note that there is nothing in the record to indicate that the People were ever aware, until the day of the trial of the names of the representatives of the Bureau who would appear for purposes of testifying.

(5) Defendant David Adams contends that the sentence of 5 to 10 years imposed to run consecutively with the 1 to 5 year sentence which he was already serving at the time of trial, was excessive and should be reduced by this court. The People had recommended a sentence of 3 to 10 years. The defendant was 29 years of age at the time of sentence. He was married and had one child. His only prior record was a conviction for burglary for which the 1 to 5 year sentence had been served at the time of the imposition of sentence in the present case.

The fact that the present sentence was made consecutive to the prior sentence very drastically, as a practical matter, affects the minimum term, since it cannot be commenced until the prior sentence has been served. The maximum sentence of 10 years for the present offense which involved the taking of $271.30, provides the institutional authorities with more than sufficient leverage. There is no evidence of violence in the defendant's record and under these circumstances, we agree that the sentence is excessive.

■■ The convictions of Charles Adams and Sandra Kemp are reversed. The conviction of the defendant, David Adams, is affirmed. The minimum of the sentence imposed upon David Adams is reduced from 5 years to 3 years, the maximum of 10 years to remain as imposed by the trial court, and the sentence ordered to run concurrently with the sentence imposed in Winnebago County. The clerk of the trial court is directed to issue an amended *mittimus* in conformity with the sentence here imposed.

Affirmed in part, reversed in part and sentence reduced.

CRAVEN, P. J., and SMITH, J., concur.