THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM PAUL LATHAM *et al.*, Defendants-Appellants.

(No. 73-199; )

Fifth District—February 14, 1974.

Michael B. Constance, of Belleville, for appellants.

Robert H. Rice, State's Attorney, of Belleville (Kenneth J. Juen, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The defendants William Latham and Louis Norton were indicted for a violation of Illinois Revised Statutes 1971, chapter 38, paragraph 18—2, armed robbery, on September 15, 1971. They were found guilty in a bench trial and were placed on probation for three years. Defendant Latham was required to serve weekends in jail for six months. Both defendants appeal.

Several issues are raised on appeal; however, it is necessary that we discuss only that issue which is dispositive. The defendants urge that the State failed to prove them guilty of armed robbery beyond a reasonable doubt under a theory of accountability. Accordingly, they request that their conviction be reversed outright and they be discharged.

The charge of armed robbery stemmed from a labor dispute that occurred on July 28, 1971, in East St. Louis, Illinois. Defendants were

among a group of black laborers who went to an Illinois Power Company work site to protest the company's alleged discriminatory hiring practices. A contingent of seven or eight blacks arrived at the work site in three automobiles. They were carrying ax handles with signs attached protesting the hiring practices of Illinois Power Company. There is a conflict in the record as to whether any of the protestors or the Illinois Power employees were armed. The record is clear that defendant Latham was unarmed.

Defendant Latham approached Kenneth Robinson, the supervisor of the crew, and informed him that the Illinois Power Company was violating an East St. Louis municipal ordinance by not having enough blacks on the job. Latham requested Robinson to call the police and an Illinois Power official. At that time, an unidentified individual yelled that one Veryl Childerson, an Illinois Power Company employee, had a gun. Latham approached Childerson and disarmed him. Latham tossed the gun to defendant Norton and he removed the gun holster that Childerson had concealed on his person. He then told Norton to leave the work site with the gun.

The testimony elicited at trial is contradictory as to what happened next. Jerry Kuglar, an Illinois Power employee, stated that an unidentified black had a gun pointed at Childerson when he was disarmed. Kuglar admitted that on the day in question he was carrying a gun. Charles Brown, an Illinois Power employee, stated that defendant Norton had a gun in addition to the gun that was tossed to him by Latham. Brown admitted that on the day in question a majority of the Illinois Power workers were armed. Lloyd Lehman, an Illinois Power employee, stated that three guns were pointed at him by blacks but that he did not see any gun pointed at Childerson. Robert Weiss, another Illinois Power employee, testified he observed four or five blacks carrying pistols. Richard Nauman, an Illinois Power employee, said he observed that two blacks, but not Norton, were pointing guns at Childerson. This witness said that Norton had threatened Childerson.

Defendant Norton contends that he was not armed with a gun other than the one that Latham had tossed to him. Furthermore, he did not threaten Childerson in any way. Latham testified that none of the blacks that were with him had any pistols. The sole reason he disarmed Childerson was to prevent the latter from discharging the weapon and harming someone. According to Latham, Childerson had made certain menacing gestures as if he was going for the gun. Latham stated he remained at the job site until William Hladick, an Illinois Power superintendent, arrived. He informed Hladick of the events that had occurred and complained about the fact that Illinois Power employees were armed. He

also informed Hladick that the confiscated weapon could be obtained from the union's business agent. Hladick corroborated defendant's statements in his testimony.

The guilt of Latham and Norton on the charge of armed robbery depends upon sustaining the State's theory of reciprocal accountability— each defendant being held accountable for the conduct of the other. The defendants were indicted and convicted for a violation of Illinois Revised Statutes 1971, chapter 38, paragraph 18—2, armed robbery, which states in full:

> "(a) A person commits armed robbery when he violates Section 18—1 while armed with a dangerous weapon."

Paragraph 18—1 states:

> "(a) A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force."

It is uncontroverted that defendant Latham was unarmed at the time he took the gun from Childerson. Thus, he cannot be guilty of armed robbery unless he is accountable for the actions of Norton who was allegedly armed. Moreover, since Norton did not participate in the actual taking of the gun, he can be guilty of armed robbery only if he is held accountable for the actions of Latham.

Illinois Revised Statutes 1971, chapter 38, paragraph 5—2, states that an individual is legally accountable for the conduct of another when:

> "(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. * * *"

■■ In *People v. Tillman*, 130 Ill.App.2d 743, 265 N.E.2d 904, we stated that in order for the State to prove a defendant guilty beyond a reasonable doubt under paragraph 5—2(c) it must establish three propositions:

> "* * * (1) That defendants solicited, aided, abetted, agreed or attempted to aid another person in planning or commission of the offenses; (2) that this participation must have taken place either before or during the commission of the offenses; and (3) that it must have been with the concurrent, specific intent to promote or facilitate the commission of the offenses. [Citation.]"

Also see *People v. Adams*, 8 Ill.App.3d 62, 289 N.E.2d 53.

It is clear from the proof adduced at trial that the State failed to establish that defendants had the concurrent, specific intent necessary to promote or facilitate the consummation of the offense of armed robbery as required under paragraph 5—2(c). There is no evidence in the record that establishes defendants planned the alleged crime. In fact, the record

reveals that defendant Latham's actions were a spontaneous reaction to a warning that Childerson had a gun.

There is little merit in the State's argument that the presence of intent or common plan to commit armed robbery was supplied by the fact defendants participated in the criminal act. As authority, the State cites *People v. Tsukas*, 406 Ill. 613, 94 N.E.2d 895.

In *Tsukas*, the supreme court stated that the State need not prove the existence of a conspiracy to commit armed robbery when the defendant "was present *as one of the armed robbers* * * *." (Emphasis added.) (406 Ill. 613, 616.) The supreme court was answering an allegation made by defendant who was convicted of armed robbery, that his conviction could not stand because the State failed to prove the existence of a conspiracy to commit armed robbery. The court's statement was directed to the issue of conspiracy and not accountability. The defendant was a participant.

■■ This record does not contain any evidentiary basis for a finding that the defendants are accountable for the actions of each another and without such accountability, there is no substantive offense committed. The judgments of convictions are reversed.

Reversed.

SMITH, P. J., and SIMKINS, J., concur.