The People of the State of Illinois, Plaintiff-Appellee, *v.* Ronald G. Grashoff, Defendant-Appellant.

(No. 73-152;

Third District—July 18, 1974.

James Brodie, of Pekin, for appellant.

Jay H. Janssen, Assistant State's Attorney, of Pekin, for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Defendant, Ronald Grashoff, was convicted on three counts of criminal damage to property following a jury trial in the circuit court of Tazewell County. He was sentenced to probation for 2 years and has appealed his conviction. These charges grow out of incidents of vandalism on April 23, 1972, at two high schools and a rental agency in Pekin. The defendant was arrested together with three other persons at about 1:30 A.M. on April 24, 1972, because when stopped by the police bits of rock and concrete were discovered in the car. Since one of the arguments raised on appeal is the sufficiency of the evidence to support the verdict the facts will be discussed at greater length later in this opinion.

The first issue in the case concerns the admission into evidence by the trial court of certain items of physical evidence. The trial court admitted into evidence two cardboard boxes (People's Exhibits Numbers 1 and 5) containing envelopes of rocks taken from the scenes of criminal property damage and from the car in which defendant was riding just prior to his arrest. People's Exhibit Number 1 contained three envelopes of rocks (People's Exhibits Numbers 2, 3 and 4) all of which were admitted into evidence over defense objection. People's Exhibit Number 5 contained two envelopes (People's Exhibits Numbers 6 and 7) which were admitted into evidence over defense objection and one envelope (People's Exhibit Number 8) which was excluded after defense objection.

It is defendant's contention that it was error to admit the envelopes of rocks into evidence because there was evidence of tampering and of a breach in the chain of custody. The State argues that there was no evidence of tampering and that it was mere speculation that the chain of custody was broken.

Louis Pollock, Pekin Police Officer, testified that he saw People's Exhibits Numbers 2, 3 and 4 for the first time on April 24, 1972. He stated that he locked them in the evidence locker and that some of them had come open. He testified that a couple of the bags were open when he placed them in the locker and that about 15 officers have keys to the locker. He further stated on cross-examination "I do not know how many rocks were in the bags or if anybody took them out and replaced them. It is possible that the rocks could have been switched."

Pekin Police Officer Donald McAtee testified that on April 25, 1972, he placed People's Exhibits Numbers 2, 3, 4, 6, 7 and 8 in a large cardboard container (People's Exhibit Number 1) and transported them to the Pekin crime lab to Mr. Brent DeWitt. McAtee also testified there were other packages of large manila envelopes inside People's Exhibit Number 1 in addition to People's Exhibits Numbers 2, 3, 4, 6, 7 and 8.

Brent DeWitt testified that he received People's Exhibit Number 1 on April 25, 1972, and that when he opened it on May 22, 1972, he removed approximately 19 envelopes from the box. He testified on cross-examination, "I returned sixteen envelopes in People's Exhibit No. 1 and there are now only three in there. There should be thirteen more." DeWitt stated that he placed People's Exhibits Numbers 6, 7 and 8 and another manila envelope in a cardboard box (People's Exhibit Number 5) and forwarded them to the Joliet crime laboratory.

James Cerven of the Joliet crime laboratory testified that he received People's Exhibit Number 5 on May 23, 1972, and that when he opened the Exhibit on May 26, 1972, he recalled looking at People's Exhibits Numbers 6 and 7 but did not recall seeing People's Exhibit Number 8. On cross-examination Cerven testified that there were three envelopes in People's Exhibit Number 5 when he opened it but that he did not see where the third one is now "Specifically, I do not recall seeing People's Exhibit Number 8."

The State cites *People v. Harris*, 17 Ill.2d 446, 161 N.E.2d 809, in support of its contention that it was not error to admit the envelopes of rocks into evidence. *Harris* was a prosecution for unlawful possession of narcotics. Defendant in *Harris* argued that the package taken from him was not shown to be the same one as that tested by the police chemist and and that no field test was made of its contents. The court rejected defendant's contention in the following language, "The officers testified that the package was given to Sims, who placed it in a safe, initialed it, and the following afternoon delivered it to the chemist. There is nothing in the evidence to indicate that it was tampered with, or that a different package was substituted. In the absence of evidence to the contrary, the facts testified to are enough to show the contents were not disturbed." The State also cites *People v. Banks*, 17 Ill.App.3d 512, 308 N.E.2d 247, which in turn relied on *People v. Wrona*, 7 Ill.App.3d 1, 286 N.E.2d 370, and *People v. Scott*, 3 Ill.App.3d 493, 279 N.E.2d 19, in support of the principle, "in the absence of any indication or suggestion of substitution, or alteration or other form of tampering  *  *  *  reasonable protective techniques are sufficient." In the present case it cannot be said that there was an absence of any indication or suggestion of substitution or alteration or other form of tampering.

■■ In applying the foregoing principles we believe the objections to Exhibits 1, 2, 3 and 4 should be treated differently than those to Exhibits 5, 6 and 7. As noted above, Exhibit 1 when originally delivered to DeWitt, the officer in charge of the Pekin Crime Laboratory, contained 19 envelopes or sacks of rocks when opened on May 22 and then when Exhibit 1 was returned to the evidence locker it contained 16 envelopes or sacks of rocks (three exhibits, later identified as Exhibits 6, 7 and 8 and one other manila envelope had been withdrawn and sent to the Joliet Crime Laboratory). However, when Exhibit Number 1 was thereafter opened only three envelopes remained. No explanation was offered and no one seemed to know what may have happened to the 13 exhibits. It is therefore undisputed that Exhibit Number 1 and its contents were not in the same condition when opened by the police custodian and the changed condition was unexplained. Under such circumstances there can be no doubt that the integrity of the evidence was not preserved. Additionally, it should be observed two of these exhibits (2 and 4) had unexplained openings in the bottom of the envelopes. This rendered doubtful any conclusion that the contents removed from the envelopes at the time of trial were the same as originally placed in the envelopes and in fact there was no such testimony offered by any of the witnesses who may have observed the contents from time to time. This is of particular significance in view of the unexplained disappearance of other envelopes in the box.

However, the effect in the unexplained change in condition in an exhibit should depend on the purpose for which the exhibit is introduced and in our view the only purpose of introducing Exhibits 1, 2, 3 and 4 was to show that the windows had been broken by foreign objects. This was not a disputed issue in the case and since the State's own witness testified there was no similarity between Exhibits 2, 3 and 4 and those later discovered in the car, such exhibits could have no tendency to prove the identity of the culprits, the only disputed issue in the case. DeWitt testified that he examined the 19 envelopes of rocks contained in Exhibit 1 and that as a result of his visual inspection he concluded that there were similarities only between those later identified as Exhibits 6 and 7. Under the facts of this case we therefore conclude that the unexplained change in condition of Exhibit 1 and its contents was not prejudicial to the defendant.

■■ This brings us to a consideration of Exhibits 5, 6 and 7. Again it seems undisputed that Exhibit 5, the container which DeWitt testified was sent to the Joliet crime laboratory containing Exhibits 6, 7, 8 and an unidentified manila envelope, was not in the same condition when received by the Joliet crime laboratory or when later returned by the

crime lab to the Pekin Police Department. Thus according to DeWitt there were four envelopes in Exhibit 5 when mailed to the laboratory but according to Cerven there were only three exhibits in the box when he received it and Exhibit 8 was not one of those received. To compound the confusion Cerven's testimony relates to tests performed on only two samples of concrete. The court excluded the exhibit later identified as Number 8 agreeing that its integrity had been impaired by its unexplained appearance, disappearance and reappearance. Not only did such confusion affect the integrity of Exhibit Number 8 but in our opinion the circumstances impaired the integrity of Exhibits 5, 6 and 7 as well. We do not see how the testimony supports the conclusion that pieces of concrete discovered at the scene of the windows broken at the rental agency and the rock discovered in the car were actually the exhibits claimed to be 6 and 7 and not some other pieces of concrete. Since the testimony of Cerven did indicate some similarity, although not conclusive, between the samples examined, this testimony did have a tendency to suggest that defendant was the culprit and consequently the erroneous admission of these exhibits was prejudicial.

The next issues relate to the sufficiency of the evidence and propriety of giving an accountability instruction. It is our conclusion that the evidence in this case was insufficient to support the verdict. The instruction to the jury was as follows,

> "A person is responsible for conduct which is an element of an offense if the conduct is either that of the person himself or that of another and he is legally accountable for such conduct. A person is responsible for the conduct of another person when either before or during the commission of a crime, and with the intent to promote or facilitate the commission of a crime, he knowingly solicits, aids, abets or attempts to aid the other person in the planning or commission of the crime."

This is Illinois Pattern Jury Instruction, Criminal, 5.03, modified. Although no issue is raised on this appeal concerning the propriety of the modification to Pattern Jury Instruction 5.03 we express some doubt as to the advisability of the modification made since even though it adds some statutory language the modification has a tendency to obscure rather than clarify or delineate the principle of accountability.

Before discussing the sufficiency of the evidence it should be mentioned that defendant did raise an issue as to the failure of the trial court to submit an issues instruction embodying any theory of accountability. We agree that an issues instruction should be submitted with the accountability instruction. (*People v. Hatfield,* 5 Ill.App.3d 996, 284 N.E.2d 708; *People v. Lehner,* 335 Ill. 424, 167 N.E.20.) However, as

the State points out, claim of error in the failure to give an instruction is waived where counsel did not tender an instruction. (*People v. Holt*, 7 Ill.App.3d 646, 288 N.E.2d 245, *People v. Jones*, 6 Ill.App..3d 669, 286 N.E.2d 87.) The failure in the present case to give an issues instruction might serve to explain some of the confusion of the jury in applying the law of accountability to the facts in this case.

■■ In order for a person to be legally accountable for the conduct of another the State must prove beyond a reasonable doubt: One, that defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of an offense; two, that participation took place either before or during the commission of the offense and three, that it was with the concurrent specific intent to promote or facilitate the commission of the offense. Section 5—2(c) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 5—2(c)), *People v. Ramirez*, 93 Ill.App.2d 404, 236 N.E.2d 284, *People v. Tillman*, 130 Ill.App.2d 743, 265 N.E.2d 904, *People v. Adams*, 8 Ill.App.3d 62, 289 N.E.2d 53, and *People v. Kriston*, 12 Ill.App.3d 18, 297 N.E.2d 206.

Citing *People v. Williams*, 104 Ill.App.2d 329, 244 N.E.2d 347, the State argues that proof of acts in furtherance of a common design or purpose to commit a crime need not be supported by words of agreement but may be drawn from the circumstances surrounding the commission of the act by the group. We agree with the principle announced in the *Williams* case but the facts in that case are not analogous to the facts in the present case. In *Williams* the defendant was positively identified as one of three men who came out of the victim's apartment at about 2:30 in the morning after the witness was awakened by screams from the victim's apartment which was located next to hers.

The State further argues that defendant's presence under the circumstances here proved aiding and abetting on his part and cites *People v. Winchell*, 100 Ill.App.2d 149, 241 N.E.2d 200, for the proposition that if proof shows defendant was present at the commission of the crime without disapproving or opposing it the trier of fact may consider such conduct in connection with other circumstances and reach a conclusion that such person assented to the commission of crime and aided and abetted the crime. However, in the *Winchell* case defendant was actually present in the car at the scene of an armed robbery of a gas station. He did nothing at the gas station to attempt to stop the robbery nor did he attempt to get out of the car. There was evidence that defendant actually counted the proceeds of the robbery and that he had hidden the weapons used in the robbery.

Both the *Williams* and *Winchell* cases can be distinguished from the present case on the basis of the facts. A significant difference between

the facts in this case and those in the *Williams* and *Winchell* cases is the absence of evidence in the instant case that the defendant was present at the scene of the offenses at the time they occurred. The State has argued that defendant was a passenger in a car seen at the scene of the crimes.

The custodian at the west campus of Pekin High School testified that after being awakened by what he thought was the noise of breaking glass he observed a car coming down the street which was a medium size car, white on the top dark on the bottom. This witness neither identified the defendant as being in the car at the time nor was he able for that matter to even indicate anything about the number or description of the occupants of the car. This was about 11:15 or 11:30 on the evening in question.

Another witness noticed broken glass in an ice cream parlor about 11:30 or 12 o'clock. He came back and sat in a lot across the street and about 12:30 A.M. observed a white over maroon 1968 or 1969 Camaro with four male occupants. He said his attention was drawn to the car because he had overheard the police say it was a maroon colored car which had broken the window out. At this time he wrote down the license number and reported it to the police. This witness was in the glazing business and was waiting for the owner of the store to appear in order to get the contract for replacing the glass. His observation of the car took place nearly 1 hour after he noticed the window in the door of the store had been broken. Although he referred to four male occupants he did not identify the defendant as being one of the occupants.

Another State's witness, the director of building and grounds of Pekin High School, testified that on the night in question he arrived at the west campus at about 11:45 and observed broken glass. At about 12:30 he arrived at the east campus and observed broken glass and remained there for about 2 hours. During this 2 hours he stated he observed a light over dark vehicle drive by the east campus and observed the same vehicle 30 seconds later going in the opposite direction. He made this observation sometime more than an hour after the vandalism was discovered. He stated he also observed other vehicles on the road that night. The testimony of this witness is silent concerning any description of the occupants of the car.

Kenneth Flynn, Pekin Police Officer, stopped the car in which the defendant was a passenger at about 1:30 A.M. He had been informed to be on the lookout for a white over maroon Camaro bearing a given Illinois license plate number. The license plate number was given to the police by the man who had noticed the broken glass at the ice cream parlor and had come back and noticed the car about an hour later.

Officer Flynn testified that when the front door on the driver's side was opened he noticed a large chunk of concrete between the door and the seat. Another Pekin police officer testified that at the same time he observed the rock between the driver's seat and the door and that on top of the right rear seat he saw pebbles.

■■ The State in summing up its accountability argument urges "Thus, the facts that all four individuals were being tried separately, the defendant was present at the scene of the crime, the defendant was in a car containing rocks which were later found to have the same chemical composition as rocks that broke glass in the A-Z Rental Building * * * and the defendant offered no proof that he opposed the rock-throwing support the accountability instruction." The State has failed to prove that defendant was present in the car at the time of the rock throwing if in fact the rock throwing was committed by someone in the car. We fail to see how defendant's presence in a car some 2 hours after the occurrence of the vandalism is evidence that the defendant was present in the car 2 hours earlier even assuming the car in which defendant was a passenger was involved in the criminal activity. If the evidence fails to prove defendant's presence at the scene of the offense at the time of its occurrence no question can arise as to whether defendant did oppose the rock throwing. As we have heretofore indicated the evidence relating to the similarity of the rocks was inadmissible but even if this evidence was admissible it had no tendency to establish either defendant's presence at the scene of the offense or his participation therein.

For the foregoing reasons, the judgment of the circuit court of Tazewell County is reversed.

Judgment reversed.

ALLOY and DIXON, JJ., concur.