(No. 41621.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
WILLMER BLUMENSHINE, Appellant.

*Opinion filed May 28, 1969.*

SOLFISBURG, C.J., and UNDERWOOD, J., dissenting.

SETH M. DABNEY, of Peoria, appointed by the court, for appellant.

GEORGE R. KENNEDY, State's Attorney, of Peoria, (JAY H. JANSSEN, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE WARD delivered the opinion of the court:

The appellant, Willmer Blumenshine, was convicted of armed robbery following a jury trial in the circuit court of Peoria County and sentenced to the penitentiary for a term of 10 to 15 years. The Appellate Court for the Third District affirmed the conviction (96 Ill. App. 2d 352), and we granted the appellant leave to appeal. The principal question presented is whether the method of pretrial identification employed by the police was legally objectionable. If it was, what are to be the consequences?

On November 29, 1965, at about 10:15 P.M., Carole Griffith and Joan McClintick, who were sisters, and Donna Piper were laundering clothes at the Swiss Maid Laundromat in Peoria. Jerry, the 16-year-old son of Donna Piper, had accompanied his mother to the laundromat. Two young men, one with a silk stocking pulled over his face, entered, and the hooded one, brandishing a gun, seized the purse of Joan McClintick and the billfold of Jerry Piper, both of whom and Mrs. Piper were at one end of the laundromat. The second robber, later identified as the appellant, had taken a position and stayed at a door at the other end of the room. This robber, who was also armed, then began to struggle with Carole Griffith for her purse. When the hooded robber came and pointed his gun at her head, Mrs. Griffith released the purse and the robbers fled.

On December 17, 1965, at 8:45 P.M., the appellant, who was then 19 years of age, and a younger companion, Kenny Willis, were arrested in the Union Bus Depot in Peoria on a bus which was about to leave for Arkansas. It appears that

the appellant and Willis were suspected by police of the armed robbery of a tavern. At the stationhouse that night, the appellant was questioned by the police concerning his whereabouts on the night of the 29th and he replied that he had been in the company of some girls.

The following afternoon, the four victims of the robbery at the laundromat were brought to a Peoria police station to view Willis and the appellant. The sisters, Carole Griffith and Joan McClintick, were asked to observe the appellant and state whether he was one of the men who had robbed them. Witnesses to other crimes of which the appellant and Willis were suspected also attended the viewing with the sisters. In the procedure employed the appellant was first shown alone in a room through a one-way mirror. Then Willis, who was separately prosecuted and sentenced for the robbery as a juvenile, was shown alone, and, finally, the two suspects were presented together. It is not clear at what point in the showing the appellant and Willis were identified, but Mrs. Griffith and Mrs. McClintick each did identify the youths as the robbers concerned. The record does not disclose whether the witnesses to the other crimes made identifications of the appellant or Willis. Donna Piper and Jerry Piper were told by the police that suspects were in custody and they were asked to view them. The Pipers also viewed the appellant and Willis through the one-way mirror and identified them as the robbers.

At the appellant's trial, held in March, 1966, each of the four witnesses identified the appellant as one of the men who committed the crime. All four witnesses also testified that they had identified the appellant at the identification proceedings conducted in the police station. Apart from this testimony of identification, no substantial evidence was presented by the State to connect the appellant with the offense. The appellant and his mother testified that he had been at home the entire evening of November 29, 1965.

The appellant contends that the circumstances under

which the appellant was viewed at the police station by the witnesses were strongly suggestive and "conducive to irreparable mistaken identification" and that no real necessity existed for the procedures used. Citing *Stovall* v. *Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, he argues that the admission of the witnesses' identification testimony at trial therefore deprived him of due process of law.

As the appellant observes, the appellate court, while affirming his conviction, stated that the pretrial identification process used here was "highly suggestive and conducted in a manner deserving of strong condemnation" and that it did not approve such a procedure. However, because of cited decisions of this court, it stated that it felt obliged to hold that the manner in which the identification viewings were conducted affected only the credibility, and not the admissibility, of the identification testimony. It must be observed, though, that in *People* v. *Nelson,* 40 Ill.2d 146, this court observed that the United States Supreme Court in *Stovall* v. *Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, recognized that where "a pretrial identification proceeding occurred on or before June 12, 1967, [the effective date of *United States* v. *Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and *Gilbert* v. *California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951] a defendant, who was without counsel, is free to establish, based on the totality of the surrounding circumstances, that the viewing of the accused was so wanting in fairness as to deprive him of due process of law. We believe that *Stovall* requires that a defendant so claiming must prove that 'the confrontation conducted * * * was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.' 388 U.S. at 301-2, 18 L. Ed. 2d at 1206, 87 S. Ct. at 1972." (40 Ill.2d at 150.) If an accused can support this claim the evidence of identification is rendered inadmissible and not simply affected as to credibility. (See *Gilbert* v. *California,* 388 U.S. 263, 272-3, 18 L. Ed. 2d

1178, 1186-7; *Stovall* v. *Denno,* 388 U.S. 293, 299-300, 18 L. Ed. 2d 1199, 1205; *People* v. *Caruso,* 68 Cal.2d 183, 436 P.2d 336, 341, Note 3.) Prior decisions of this court, to the extent they are contrary, are to be considered as having been overruled.

A showing by police of a suspect standing alone, in what is often described as a "show-up," has been observed to carry with it a dangerous degree of improper suggestion. (See *People* v. *Gardner,* 35 Ill.2d 564, 572; *Biggers* v. *Tennessee,* 390 U.S. 404, 407, 408, 19 L. Ed. 2d 1267, 1269, 1270 (dissenting opinion); *Wright* v. *United States* (D.C. cir.), 404 F.2d 1256, 1259-60; *Crume* v. *Beto* (5th cir.), 383 F.2d 36, 39; Wall, Eye-Witness Identification in Criminal Cases (1966), pp. 27-29.) Too, it can be said that where, as here, there is a showing of a suspected accomplice after viewing of the first suspect, either alone or together with the first suspect, the danger of suggestion, by association, is increased. In *Stovall,* the Supreme Court stated that "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." (388 U.S. at 302, 18 L. Ed. 2d at 1206.) Of course, not every viewing of a suspect or suspects alone will be considered a denial of due process, for there may be justifying or saving circumstances. See, *e.g.,* identifications upheld in: (1) *Stovall* v. *Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, where the viewing in a hospital was "imperative," it being uncertain that the wounded victim would survive; (2) *People* v. *Speck,* 41 Ill.2d 177, 193, where a principal factor was that it was apparent that the identifying witness had an excellent opportunity to observe the defendant at the time of the crimes; (3) *People* v. *Robinson, ante,* at 371, where the person identified was known to the witness prior to the crime; (4) *People* v. *Bey, ante,* at 139, where uncommon distingushing characteristics were the principal means of identification.

But here we find the suggestive procedures for identifica-

tion used cannot be defended. The appellant was viewed alone and then in the company of the suspected accomplice. No reason is offered why the appellant did not appear in a lineup for viewing by the witnesses to the robbery, which had been committed three weeks before the appellant's arrest. No circumstances can be found to justify the showing which was conducted. Also, to parenthesize, it is not shown that the witnesses to other crimes, who were present at the showing with the sisters, identified the appellant or Willis as participants in these other offenses, but it was improper to have had the appellant viewed for possible identification at the same time and place by witnesses to the robbery and by witnesses to other offenses. See *United States* v. *Wade,* 388 U.S. 218, 234, 18 L. Ed. 2d 1149, 1161.

The record, though it does contain some relevant evidence, does not permit an "informed judgment" as to whether the witnesses' identifications of the appellant were based on observations independent of and uninfluenced by the improper identification proceedings at the police station. (See *Gilbert* v. *California,* 388 U.S. 263, 272, 18 L. Ed. 2d 1178, 1186.) Putting it otherwise, we cannot determine if the appellant was denied due process. Whether there was a denial depends on whether his identification at trial was dependent on or influenced by the improper viewing. *Cf. Wright* v. *United States,* 404 F.2d 1256, 1260, 1261.

Following the direction of *Gilbert* (388 U.S. at 272, 18 L. Ed. 2d at 1186), made under circumstances resembling those here, we order that the judgment of conviction be vacated, pending a hearing in the trial court at which the State will be given the opportunity to establish by clear and convincing evidence that each witness's identification had an origin independent of the improperly suggestive confrontation at the police station. (*United States* v. *Wade,* 388 U.S. at 240, 242, 18 L. Ed. 2d at 1164, 1166; *Gilbert* v. *California,* 388 U.S. at 272, 18 L. Ed. 2d at 1186; *cf. People* v. *Ballott,* 20 N.Y.2d 600, 233 N.E.2d 103, 106,

107.) The Supreme Court in *Wade*, has offered examples of factors which a trial court may consider in determining whether a witness's identification has an independent origin: "for example, the prior opportunity [how long and how well] to observe the alleged criminal act, the existence [or absence] of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification" and any acquaintance with the suspect prior to the crime. 388 U.S. at 241; 18 L. Ed. 2d at 1165.

If the identifications by all witnesses concerned are shown to have been independent of the police station identifications, the trial court will enter a new judgment reinstating the conviction. (388 U.S. at 242; 18 L. Ed. 2d at 1166.) However, if any of the witnesses' identifications are not shown to be based on observations made other than at the stationhouse, the trial court must grant the appellant a new trial, unless the court is able to declare that the testimony of such a witness or witnesses was harmless error beyond a reasonable doubt. (*United States* v. *Wade*, 388 U.S. at 242, 18 L. Ed. 2d at 1166, citing *Chapman* v. *California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 711, 87 S. Ct. 824.) If a new trial is to be conducted, identification testimony from witnesses who attended the stationhouse confrontation will be received only if the trial court determines at the hearing that the proposed testimony has a source independent of and free from the taint of the identification made at the police station. *Gilbert* v. *California*, 388 U.S. at 272-3, 18 L. Ed. 2d at 1186-87.

Because the trial court may reinstate the judgment of conviction we are vacating, which would mean there would be no new trial in this case, we must consider the second claim of error advanced by the appellant. He argues that two

statements elicited from him during interrogation at the police station were not voluntarily given. The appellant had said when questioned that he had been with some girls the evening of the crime, whereas he and his mother testified at trial that he had been home that entire evening. Too, when asked by the officers how much money he was carrying, he said $6, but a search disclosed he had $286. The appellant did not at any time seek to raise the question of voluntariness in the trial court, by motion or otherwise. It is settled that if an accused fails to object to the introduction into evidence of an admission or confession, its reception in evidence without preliminary proof of voluntariness is proper and not open to review. *People* v. *Sims,* 32 Ill.2d 591, 594, 595, and cases cited there; *People* v. *Hurry,* 385 Ill. 486, 489.

The judgments of the circuit court of Peoria County and of the Appellate Court, Third District, are vacated, and the cause is remanded to the circuit court for further proceedings in accordance with the views expressed herein.

*Vacated and remanded, with directions.*

Mr. JUSTICE UNDERWOOD, dissenting:

My problem with the majority opinion lies in the fact that it seems to apply to *Wade, Gilbert* and *Stovall* retroactively to an extent greater than that necessitated by the opinions in those cases. I agree that a pre-*Stovall* identification may be attacked on trial and direct appeal as insufficient—I do not agree that *Wade, Gilbert* and *Stovall* reopened to this attack every closed case in which a defendant might now assert that his pre-*Stovall* identification procedure denied him due process.

Nor am I at all certain that the end result of the identification proceedings in this case was a denial of due process to the defendant. He was not masked during the robbery, and one of the witnesses had engaged in a struggle with him, obviously giving her a close view. All four persons in

**516**

the laundromat at the time of the robbery identified defendant at trial as one of the robbers. True, the stationhouse identification proceedings were less than desirable, but the totality of the circumstances here does not convince me that a denial of due process occurred. This, coupled with my uncertainty as to the precise import of the majority opinion, prompts this dissent.

SOLFISBURG, C.J., also dissenting.