THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY GARDNER *et al.,* Defendants-Appellants.

(Nos. 54786, 54787 cons.;

First District—December 1, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Vincent J. Cerri, Ronald P. Katz and James J. Doherty, of counsel,) for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Richard S. Jalovec, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:

Anthony Garner, who is also referred to in the briefs as Anthony Gardner, was indicted as Anthony Garner and will be referred to in this opinion as Garner.

After a jury trial, Anthony Garner and Nevin Woods were found guilty of armed robbery. On August 25, 1969, the trial court sentenced the defendants to the Illinois State Penitentiary for a period of not less than seven years and not more than fourteen years. The defendants raise the following four issues for review:

1. Defendants were not proven guilty beyond a reasonable doubt.

2. Defendants were denied a fair trial when the prosecutor asked one of the defendants about his failure to register a firearm and when the prosecution's witnesses, not being experts, were permitted to testify that one of the defendants was shot by a ".38" caliber firearm.

3. The trial court abused its discretion by allowing the prosecution's witnesses to testify in rebuttal where such testimony was repetitious, cumulative and outside the scope of proper rebuttal.

4. The defendants received an improper sentence.

Louis McEwing, ticket agent at the Chicago Transit Authority (hereinafter C.T.A.) elevated station at 63rd and Dorchester, testified that on Saturday, February 18, 1967, at approximately 4:00 A.M. he heard a tapping on the ticket booth window. McEwing testified that he looked up and saw a ".22" or ".25" automatic staring him in the face. McEwing stated that defendants told him to open the ticket booth door after which the defendants entered. McEwing testified that the booth and the station were "well lighted" and that he could see the defendants' faces. The defendants walked McEwing to the platform washroom.

William Spaulding, a C.T.A. policeman at the time of the robbery, testified that he was in the washroom when McEwing knocked on the

door. Spaulding stated that he opened the door and noticed the defendants standing behind McEwing. Spaulding testified that when he determined a robbery was in progress he stated that he was a "police officer" and pulled his gun. The defendants fled, but Spaulding was able to wound Garner, the defendant carrying the small automatic.

Henry Stinson, an alibi defense witness, testified that the defendants were in his mother's apartment at the time of the robbery. Stinson also testified that Woods shot Garner accidently on Sunday, February 19, 1967. Defendant Garner testified that Woods shot him. Garner also testified that he told someone at the hospital that two unknown men shot him.

Police officers Burrell Albertson and Michael Belice, rebuttal witnesses, testified that Garner told them that two unknown men, not Woods, shot him.

■■ The defendants' first contention is that they were not proven guilty beyond a reasonable doubt. The two eye-witnesses observed the defendants in a "well lighted" elevated station. McEwing stated that he could see the defendants' faces and what they were wearing. Spaulding, a police officer, stated he observed the defendants for almost twenty seconds. The defendants did not attempt to conceal their faces.

The case of *People v. Peck*, 358 Ill. 642, cited by defendants is easily distinguished since the robbery in that case occurred outside on a dark night and the robber's face was covered by a mask and there was only one eye-witness.

■■ The defendants cite *People v. Blumenshine*, 42 Ill.2d 508 as an authority to back up their contention that the identification of Garner was the result of a highly suggestive line-up. In *Blumenshine*, the witness viewed the defendant standing alone through a one-way mirror. In the instant case, McEwing viewed Garner in a five man line-up. The fact that Garner wore his green felt hat during the line-up was not suggestive, especially since McEwing's identification had been corroborated by Spaulding's identification of Garner. There was other evidence, such as the gun and Garner's wound.

The defendants cite *People v. Gardner*, 35 Ill.2d 564, a rape case where there was only one eye-witness, the woman raped, as authority that an alibi cannot be overcome when the only contradicting evidence was the identification of the defendants. The *Gardner* case does not apply here because defendants' alibi was impeached by the testimony of two eye-witnesses, one a police officer, placing the defendants at the scene of the crime.

The defendants' second contention is that they were denied a fair trial when the prosecutor asked Garner about his failure to register a

firearm and the prosecution's witnesses not being experts, were permitted to testify that one of the defendants was shot by a ".38" caliber firearm.

■■ The trial court sustained the defense counsel's objection to the prosecutor's question asking Garner whether he had ever registered the gun with anyone. The court instructed the jury to disregard the question and answer. The question was connected with the line of questioning which was being allowed by the prosecutor. The prosecutor was attempting to determine who owned the gun.

■■ Twice the prosecutor attempted to ask police officers whether Garner was shot by a ".38" caliber firearm. In both situations the court sustained the defense objection to the question and instructed the jury to disregard the question and answer. The size of the wound was also mentioned by the prosecution in its closing argument, but the court also sustained the defense objection and told the jury to disregard what the prosecution had just said. Such stricken testimony and argument were not material factors in the conviction.

The defendant's third contention was that the trial court abused its discretion by allowing the prosecution's witnesses to testify in rebuttal where such testimony was repetitious, cumulative and outside the scope of proper rebuttal.

■■ The prosecution called the two police officers as rebuttal witnesses in order to prove that Garner did in fact talk to police officers at the hospital. Garner stated that he did not remember talking to a police officer at the hospital. The rebuttal testimony of the police officers was also introduced to explain Garner's false statement that he was shot by two unknown persons. The admission of the rebuttal testimony was a matter within the sound discretion of the trial court.

■■ The final contention of the defendants is that they received an improper sentence in that they were sentenced for lying on the witness stand as well as for the armed robbery they were charged with. The trial court did not impose a heavier penalty because the defendants committed perjury. The trial judge stated that he was revolted by the fact that the defendants lied on the witness stand in an effort to defeat justice. The trial judge never intimated that he was sentencing the defendants for anything other than armed robbery.

In *People v. Moriarty*, 25 Ill.2d 565, cited by the defendants, the trial judge imposed a heavier sentence on the defendant because he chose a jury trial. Consequently, the *Moriarty* case is not on point.

■■ The defendants also contend that the minimum sentence was excessive. The minimum sentence imposed upon the defendants was not excessive. In *People v. Lillie*, 79 Ill.App.2d 174, the court stated that the

adequacy of punishment should determine the minimum sentence. A hearing in aggravation and mitigation was conducted. Garner had previous convictions for theft, disorderly conduct and criminal damage to property. Woods had a previous conviction for grand theft. Armed robbery is a very serious offense. The court in *People v. Taylor*, 33 Ill.2d 417, stated that the power to reduce sentences should be used with considerable caution and circumspection, for the trial judge has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BURMAN and DIERINGER, JJ., concur.