THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE HAYES, Defendant-Appellant.

(No. 57534; ▮▮▮▮▮▮▮)

First District (4th Division)—August 8, 1973.

Walter LaVon Pride, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and Roger Horwitz, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

Defendant, Clarence Hayes, was charged with armed robbery on March 14, 1971. After a jury trial, he was found guilty and sentenced to a term of five to six years in the Illinois State Penitentiary.

On appeal, defendant contends that (1) the evidence was insufficient to support the jury's verdict, (2) the court erred in denying a defense motion to suppress the identification of defendant, (3) the court should

not have allowed a certain State's exhibit to be shown to the jury, (4) the court demonstrated such prejudice against defendant, in its rulings, as to deny defendant a fair trial and (5) the sentence imposed was excessive.

The victim, George Green, testified that he was employed as Assistant Director of Student Activity at Kennedy-King College. On March 14, 1971, he left his home at approximately noon to attend Mass. He boarded a Chicago Transit Authority bus at 67th and Crandon. When the bus stopped at 67th and Cottage Grove, the defendant boarded the bus and sat down beside him. Mr. Green was seated two seats from the rear, on the right side of the bus. It was a bright, sunny day. The defendant jostled the victim with his elbow and said, "I hate to do this, but I want you to give me all the money in your wallet." Simultaneously, the defendant drew a gun and pressed it in the victim's side. Mr. Green took out his wallet and gave the defendant about $35.

The witness stated that he viewed the defendant on the bus for eight to ten minutes. "I had to face him to give him my money and I was looking at his face all that time." The defendant remained on the bus until it stopped at 67th and South Chicago Avenue. Then he left the bus and proceeded just past a viaduct. As the bus approached the viaduct, the victim yelled to the bus driver that he had been robbed and asked him to stop the bus.

Mr. Green further testified that after he yelled to the driver, he got off the bus and walked under the viaduct. He observed the defendant standing on a corner looking around him as if a car were going to pick him up. Then he saw defendant walk south on South Chicago Avenue. The witness stated that he observed the defendant on the corner for a period of about five minutes from a distance of about fifty feet. Then he walked to King Drive and 69th, and called the police from a Liquor Mart Store. Mr. Green stated that the man who robbed him had processed hair, with a very heavy oil content. He had a few strands of hair on his chin and a very faint growth of hair across the lip.

The witness further testified that on March 16, 1971, he visited the Area 2 robbery headquarters of the Chicago Police Department and viewed 400 to 500 different photographs, from which he identified a picture of the defendant. In the photograph, defendant's hair was processed and had a slicked back appearance. On March 23, 1971, Mr. Green again visited the Area 2 headquarters, and identified the defendant in person. The witness stated that defendant's head may have been covered with a hat, because he didn't notice defendant's hair on that occasion. On April 7, 1971, he again viewed the defendant at a preliminary hearing and that the hair was no longer slicked back and was

not the same as it was on the day he was robbed. Mr. Green identified the defendant at trial as the man who had robbed him.

On cross-examination, the witness stated that he did not recall whether he had told the police that the man who robbed him had any facial hair. He stated he didn't remember whether the officer had asked that question. On re-direct, he testified that the man who robbed him was over six feet tall, about 170 to 180 pounds and appeared to be 21 or 22 years old.

Detective Kenneth Christiano of the Chicago Police Department Area 2 Robbery Division testified that he arrested the defendant on March 23, 1971, on the street in front of his home. He took defendant and James Hayes, defendant's brother, to the Area 2 headquarters. At the time of the arrest, the defendant's hair was oily and slicked down, not in the normal process, but more in between a natural and a process. The officer stated that he would describe the hair as processed. The witness also said that on April 7, when he saw the defendant in court, defendant's hair was worn in a natural. Officer Christiano further testified that when defendant was viewed by the victim at the Area 2 headquarters, he was wearing a brown hat. Defendant had some hair on his chin, very sparse, and if he had a mustache, it wasn't a heavy one. On cross-examination, the officer stated that Mr. Green walked in and identified the defendant before he had a chance to conduct a lineup.

The defendant, Clarence Hayes, testified in his own behalf. He stated that he was home the entire day of March 14, 1971. He denied that he had ever had a process on his hair or had ever put oil on it. Defendant said that he had always worn his hair just the way it appeared at trial, in a natural.

Four alibi witnesses, the defendant's mother and father and two family friends, all testified that defendant was at home at the time of the robbery. All four stated that defendant's hair had never been processed and had always been worn in a natural. They also testified that defendant's facial hair had always been the same as it appeared at trial.

Defendant first contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt. He argues that the identification testimony of the victim was weak, because the victim testified that the man who robbed him had processed hair and the defendant at trial had a natural. Defendant further points out that the victim failed to mention that the man who robbed him had any facial hair until the trial. He also maintains that the alibi testimony of defendant and four others raised a reasonable doubt as to defendant's guilt.

The defense focuses its attention on defendant's hair style and facial

hair in attacking the credibility of the victim's identification. The question of identification is a matter for the jury and its determination should not be upset unless the evidence is so unsatisfactory as to create a reasonable doubt of defendant's guilt. *People v. Tucker*, 118 Ill.App.2d 136, 139, 255 N.E.2d 31, 32.

A similar question was raised in *People v. Stringer*, 52 Ill.2d 564, 568-569, 289 N.E.2d 631, 634, where defendants argued that there was a reasonable doubt as to their guilt because the identification testimony was weak and the mother of each defendant testified that her son was at home at the time of the crime. In sustaining the conviction, the supreme court stated that it would not substitute its judgment for that of the jury on the question of credibility of witnesses and would not reverse a criminal conviction unless the evidence was so improbable as to raise a reasonable doubt of guilt. The court went on to state that where identification is at issue, the testimony of a single witness is sufficient to convict, although contradicted by the accused, provided the witness is credible and had an opportunity to view the accused under circumstances which would permit of a positive identification.

■■ In the instant case, the victim had ample opportunity to form a basis for his identification of defendant as the man who robbed him. He sat next to him on the bus for a period of eight to ten minutes and was face to face with the robber when he gave him the money. It was a sunny day and visibility was good. After the robber got off the bus, the victim again viewed him for about five minutes from a distance of about fifty feet. Subsequently, the victim picked out the defendant's picture from 400 to 500 photographs, and immediately identified the defendant at the police station while he was seated next to his brother. Under these circumstances, we think the jury was amply justified in finding the victim's identification testimony credible and worthy of belief.

■■ The defendant also argues that the alibi testimony was sufficient to rebut a finding of guilty. Of the four alibi witnesses, two were the defendant's parents and two were family friends. The record reveals that their testimony was contradictory in several respects. The credibility of the defendant's alibi witnesses and the weight to be afforded their testimony was of course a question for the trier of fact. We think the jury's decision to disbelieve the alibi witnesses was amply justified by the record.

The defendant next alleges that the trial court erred in denying defendant's motion to suppress the identification of defendant by the victim. Defendant argues that the pre-trial showing of defendant, handcuffed and sitting next to his brother, was so unnecessarily suggestive

and conducive to mistaken identification as to amount to a denial of due process.

■■ At the hearing on the motion to suppress, the victim testified that the police asked him to come and view some people. At the station, he proceeded into the room and saw two people, defendant and another person who resembled defendant. Mr. Green stated that both men were seated. He did not testify that he saw handcuffs on the defendant. We do not think from a review of the record that the pre-trial confrontation was unnecessarily suggestive.

■■ Where it is alleged that a pre-trial confrontation was tainted, however, the in-court identification testimony may still be properly admitted if an adequate independent origin is shown. (*People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152.) In the case at bar, the victim testified that he had observed the defendant for eight to ten minutes as he was seated beside him on the bus and for about five minutes as defendant stood on a street corner. Subsequently, the victim identified a photograph of defendant from 400 to 500 pictures. Under these circumstances, even if the police station confrontation had been unnecessarily suggestive, the in-court identification of the defendant by the victim had an adequate independent basis. Therefore the court properly denied the motion to suppress.

Defendant also contends that the court erred in admitting into evidence the State's Exhibit No. 1, a police photograph of defendant taken on February 12, 1971, and introduced for the purpose of impeaching defendant's testimony that he had always worn a natural. The State alleged that the photograph showed defendant's hair worn closer to his head. Defendant identified the picture as a true portrayal of himself, but testified that the photograph showed a hat ring in his hair, which made his hair look closer to his head in one spot.

The record reveals that prior to showing the photograph to the jury, the trial judge held a hearing outside the presence of the jury where the admissibility of the photograph was fully discussed. One of the three police photographs was removed and the other two were cut down to remove the police identification number and chain. Defense counsel marked the place where he wanted the pictures cut and the judge cut along those lines.

■■ The photograph was material to the issue of defendant's hair style, which was an element of the identification testimony of the victim. Whether to admit a photograph into evidence lies within the discretion of the court. (*People v. Thomas*, 88 Ill.App.2d 71, 81, 232 N.E.2d 259, 264.) We think the trial judge properly exercised his judgment in ad-

mitting the photograph and that the decision was not prejudicial error.

Defendant next alleges that the court demonstrated such prejudice in its rulings against the defendant as to deny him a fair trial. We have reviewed the portions of the record cited by defendant and find that they in no way indicate prejudice against defendant on the part of the trial judge.

■■ Finally, defendant contends that the court erred in imposing a sentence of five to six years when the punishment for armed robbery at the time of the crime was an indeterminate term with a minimum of not less than two years. (Ill. Rev. Stat. 1969, ch. 38, par. 18—2(b).) Defendant argues that the trial court erroneously applied the five year minimum effective August 24, 1971, (Ill. Rev. Stat. 1971, ch. 38, par. 18—2(b)). It is obvious, however, that the sentence imposed on defendant was well within the statutory limits in effect at the time of the offense. We think the trial court properly considered the judgment of the legislature as evidenced by the amendment to paragraph 18—2(b), and we cannot say that the sentence imposed was excessive.

For the reasons stated, the judgment of the Circuit Court will be affirmed.

Affirmed.

DIERINGER and JOHNSON, JJ., concur.