THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JERRY DEAN HAHN, Defendant-Appellant.

Fourth District    No. 12994

Opinion filed July 1, 1976.

970

Frederick F. Cohn, of Chicago, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (G. Michael Prall, Stephen M. Deitsch, and Robert C. Perry, all of Illinois State's Attorneys Association, and Jeffrey B. Levens, Law Student, of counsel), for the People.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The defendant, Jerry Dean Hahn, was indicted for the offense of burglary and convicted after a jury trial in the circuit court of Champaign County. Defendant was sentenced to the Illinois State Penitentiary for a period of 4 to 12 years.

Numerous questions are assigned as error. Defendant contends he was denied a fair trial on the grounds that: (1) the State's identification testimony should have been suppressed, since the identification procedure was unnecessarily suggestive; (2) during the testimony of a defense witness, a spectator stated that the witness was lying; (3) a certain photograph should not have been admitted into evidence, nor sent to the jury room; (4) defendant was not permitted to introduce evidence relating to measurements taken by an engineer and photographs of the scene; (5) the court excluded evidence that a defense witness made a prior statement, immediately after the defendant's arrest, consistent with his in-court testimony; (6) the prosecutor's conduct during final argument was prejudicial error; and, (7) the jury was not instructed upon a vital issue. Additionally, defendant claims the evidence was insufficient to sustain a conviction beyond a reasonable doubt, and urges remand for resentencing.

Officer Rinehart proceeded to the Second Chance Tavern in response to a burglar alarm which had been telephoned to police by a burglar alarm company. He checked doors, windows and the alley; about eight feet from the door to the furnace room of the building which housed the tavern, the door opened and he saw a man for two seconds. Officer Rinehart later identified the defendant as the man he had seen.

Officer Lynch pursued a man he saw fleeing, and later testified the defendant resembled the man he had been chasing. This identification was based on clothing similarity.

Defendant was arrested by Officer Blackman and Deputy Mumm, shortly after Rinehart and Lynch saw the man they later identified as defendant, several blocks from the Second Chance Tavern.

Defendant contends that the trial court committed error when it denied his motion to suppress the State's identification evidence. He argues that the identification procedures used here were unnecessarily suggestive, relying on *Stovall v. Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; *People v. Lee*, 44 Ill. 2d 161, 254 N.E.2d 469; *People v. Blumenshine*, 42 Ill. 2d 508, 250 N.E.2d 152. He claims the failure to conduct a lineup cannot be excused on the basis that there was need for prompt on-the-scene identification, and that the confrontation with Officer Rinehart at the police station affected Rinehart's in-court identification testimony.

■■■ In *Stovall v. Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, the Supreme Court ruled that confrontation for the purpose of identification may be so unnecessarily suggestive and conducive to irreparable mistaken identification that the accused is denied due process of law. Where a defendant has presented sufficient evidence to establish the unfairness of a pretrial confrontation, an in-court identification may be admitted into evidence only if it is shown that it has an independent

origin arising from the witness' uninfluenced observation of the accused. (*People v. Blumenshine*, 42 Ill. 2d 508, 250 N.E.2d 152.) The State must prove the uninfluenced origin of the in-court identification by clear and convincing evidence. (*People v. Holmes*, 6 Ill. App. 3d 254, 285 N.E.2d 561.) It is settled that even though an identification confrontation is improper or has been suppressed, an in-court identification is nevertheless admissible if it is based on a prior independent origin, one arising from an earlier uninfluenced observation of the suspect. *People v. Spencer*, 7 Ill. App. 3d 1017, 288 N.E.2d 612; *People v. Wright*, 126 Ill. App. 2d 91, 261 N.E.2d 445.

The identification procedure complained of here occurred at the Champaign police station some 45 minutes to one hour after the crime. Officer Rinehart testified that after he returned to the Champaign Police Station on the morning of the crime, he walked into the booking room and saw the defendant in the company of Officer John Lynch. He recognized the man in the booking room as the man he had seen by the furnace room door at the Second Chance Tavern approximately 45 minutes to an hour before.

Although argument is made as to whether this confrontation was accidental, we believe, in any event, no showing was made that this identification procedure was deliberately planned by the police. The identification process here was not ideal. In *Stovall*, the Supreme Court stated that, "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." But not every viewing of a suspect or suspects alone will be considered a denial of due process. *People v. Blumenshine*, 42 Ill. 2d 508, 250 N.E.2d 152.

In this case, although Officer Rinehart saw the defendant in the doorway for approximately two seconds, the area was well lighted and the witness was standing only eight feet away. Rinehart testified that he had no difficulty in seeing the burglar's face and features. The witness was also quite clear as to how the defendant was dressed when he encountered him near the furnace room door.

■■ We believe the evidence clearly and convincingly demonstrates that the witness had ample opportunity to observe the defendant and to remember what he observed. The identification by Rinehart is established to have been based on the witness' observations at the time of the crime, and therefore unaffected by the suggestive pretrial identification procedures. Significantly, when Officer Rinehart encountered the defendant in the booking room, the defendant was not dressed in the same way as he had been when Officer Rinehart had seen him at the Second Chance. The defendant was not wearing the gloves and coat worn by him at the time of the burglary. The record indicates that the

defendant had been instructed to remove his outer garments by other police officers. These articles of clothing were in a pile in the booking room, but Officer Rinehart did not notice them until after he recognized the defendant.

We hold that the in-court identification had an independent origin, and the trial court properly denied the defendant's motion to suppress the identification evidence. See *People v. Hanks*, 17 Ill. App. 3d 633, 307 N.E.2d 638.

Defendant also contends he was denied a fair trial on the basis of a spectator's statement, during the testimony of a defense witness, that the witness was lying.

During the testimony of James E. Mullins, a defense witness who was in the nature of an alibi witness, a courtroom spectator continued to state, "Lies, lies, that a lie. He's lying." Defense counsel heard these remarks, but made no objection, and the court did not, at this point in the proceedings, admonish the jury to disregard the spectator's comments.

Mullins was excused as a witness, and defense counsel called his next witness, William Sheridan. Sheridan began to testify, but, after objection by the People, was not permitted to testify further. During argument on this matter, outside the presence of the jury, defense counsel stated to the court:

> "Mr. Harrington: Incidentally, also, your Honor, off the subject just a minute but one of the spectators in the courtroom just when I went out to get this witness [Sheridan] related to me that there is a gentleman sitting in the audience that all during Mr. Mullins [the last witness'] testimony, he said, 'Lies, lies. That's a lie. He's lying.' "

Defense counsel argued the jury was able to hear the remarks. He stated that he had also heard the remarks.

The trial court ordered the person, who had told defense counsel she had heard the spectator's comments, to be examined under oath in chambers. This witness, who was the defendant's mother, stated that she had heard a spectator make the remarks. During cross-examination, the defendant's mother admitted that this spectator was sitting approximately as close to the prosecutor as he was to her. At that time, the prosecutor stated for the record that he had heard no such statements in the courtroom during Mullins' testimony. The trial judge, who had previously stated that he would admonish the jurors to disregard such remarks if the jurors had heard them, then said he would ask the members of the jury if they had in fact heard any remarks from any spectators during Mullins' testimony. After the trial judge and the attorneys returned to the courtroom, the trial court asked the jury as follows:

"THE COURT: Mr. Bailiff, would you step up here for a minute, if you will, please? Ladies and Gentlemen of the jury, did any of you hear any comments from the spectators with reference to the testimony of the last witness? If you did, please raise your hand. All right, none of you did, is that correct? All right, we will continue then."

The defendant, conceding that the court attempted to determine whether any jurors heard the remarks, contends the manner of inquiry was inadequate, since the court did not adequately determine whether the jury heard the objectionable remarks. The defendant points to the fact that Sheridan was the "last witness" before the court's inquiry of the jury. On this basis, the defendant argues that since the court questioned the jury solely as to what they heard in regard to the "last witness" this inquiry was insufficient because Mullins, during whose testimony the remarks were made, was not the last witness to appear before the jury.

■■ The record discloses, however, that Sheridan was still sitting in the witness stand at the time the trial court made its inquiry of the jury, and therefore the court and the jury had to be aware that the court's mention of the "last witness" referred to Mullins, not Sheridan. The statement by the court was sufficiently definite to apprise the jurors of the incident, assuming they did in fact hear the remarks. Of course, if the jurors did not hear the spectator's remarks, at the most, the court's statement may have confused the jurors, but did not deny the defendant a fair trial.

The defendant next urges that the trial court committed reversible error by admitting a certain photograph into evidence, and compounded the error by permitting the photograph to be sent to the jury room.

Admitted into evidence, over objection by defense counsel, was a posed picture showing the defendant and Officer Rinehart pointing to certain alleged white marks on defendant's clothing.

At the trial, Officer Rinehart testified that when he saw defendant at the scene of the crime, defendant was wearing dark clothing, yellow gloves, a blue-green jacket, and some type of hood which he identified as a hooded sweatshirt. He testified that he observed the same white-chalky substance on defendant's clothing as he had observed in the tavern.

"Q. Did you see any similar substance, chalky-like substance, present in the area of that door?

A. Yes, sir. Around the—as you are going from the furnace room into the bar area there is wallboard or chalkboard in that area, there is loose material around the edges."

The photograph offered by the State showed these chalk marks.

"Q. Where are you pointing at?

A. Pointing to the chalky substance on the defendant's trousers.

Q. There also appears to be some white substance in the area of the lower portion of the defendant's jacket. Is that the same kind of substance?

A. Yes."

Defendant claims the photograph should have been excluded on the ground that photographs of a scene or objects which have been posed or arranged by one party for the purpose of taking the photograph in the way or manner sought to be shown, are not admissible. *People v. Crowe*, 390 Ill. 294, 61 N.E.2d 348.

■■ We do not disagree with the principle of law relied upon by the defendant. We believe, however, that the photograph was material to the issue of defendant's presence at the scene of the crime, since it served to corroborate some aspect of the identification testimony of the witness. (See *People v. Hayes*, 14 Ill. App. 3d 248, 302 N.E.2d 411.) Whether to admit a photograph into evidence lies within the discretion of the trial court. *(People v. Thomas*, 88 Ill. App. 2d 71, 232 N.E.2d 59.) We think the trial judge did not abuse his discretion in admitting the photograph, and that decision was not error.

The defendant contends that error also occurred in permitting the photograph to be taken by the jury into the jury room during its deliberations. Defendant argues that "since the picture contained the testimony of the officer, permitting the picture to be with the jury during its deliberations was equivalent to permitting a transcript of the officer's testimony or deposition to be taken to the jury room." Defendant claims this procedure was reversible error either since the picture may be deemed the prior statement of the witness *(People v. Spranger*, 314 Ill. 602, 145 N. E. 706), or because it may be deemed to be an incorporation by implication of his trial testimony. Cf. *People v. Willy*, 301 Ill. 307, 133 N.E. 859; *People v. Hoggs*, 17 Ill. App. 3d 67, 307 N.E.2d 800.

Whether an exhibit may be taken to the jury room is a matter within the discretion of the court, and this decision will not be reversed on appeal in the absence of a showing that the court abused its discretion, thereby prejudicing the defendant. *People v. Allen*, 17 Ill. 2d 55, 160 N.E.2d 818.

■■ The cases relied upon by the defendant are inapposite. *Spranger* involved a written statement by the defendant which was taken into the jury room during deliberations. *Willy* held that it was error to permit an attorney to read from the record during his closing argument, and *Hoggs* merely clarified the holding in *Willy*. Under these circumstances, we do not believe the trial court abused its discretion, and the photographs were properly permitted into the jury room.

Defendant next contends that he was denied a fair trial since he was not permitted to introduce evidence relating to measurements taken by an

engineer and photographs of the scene. Defendant urges that Officer Rinehart's identification of defendant, as the man he observed leave and re-enter the furnace room, was crucial to the prosecution's case. On this basis, the physical structure and relationship of the alley and furnace room were relevant to test the credibility of the witness' testimony. Defendant claims these relationships, *i.e.*, both in distance and angle of the door to the furnace room, the wall of the alley, and the wall of the furnace room, were pertinent "To demonstrate that it was physically impossible for Officer Rinehart to have seen what he testified to from the location where he testified he was situated."

In order to demonstrate this physical impossibility, the defendant called an engineer to testify to his having measured the alley and the furnace room, the location of the door and the interrelationship, and to present photographs demonstrating the interrelationship and location of the alley to the furnace room.

The court sustained the People's objection, thus precluding the defendant from presenting the testimony of the witness, Mr. Sheridan. The People's objection was twofold: first, it would be improper for an expert to give his opinion as to what could be seen by an untrained observer; and second, the defendant had failed to supply the prosecution with proper notice of the witness' testimony.

The People contend that the court properly excluded the testimony of Mr. Sheridan because the defense failed to list him as a witness in violation of the court's discovery order. Apparently, the prosecution first learned that Mr. Sheridan was to testify when the witness was called to the stand by the defense. The court had previously ordered the defendant to disclose to the People the names and addresses of all its witnesses. The People argue that violation of the court's discovery order justified the exclusion of the witness' testimony, pursuant to Supreme Court Rule 415(g) (Ill. Rev. Stat. 1973, ch. 110A, par. 415(g)).

We believe the trial court erred in excluding the evidence on the basis of Rule 415(g).

In *People v. Adams*, 8 Ill. App. 3d 62, 289 N.E.2d 53, the court discussed the action of the trial court in permitting certain prosecution witnesses to testify whose names had not been furnished defendant as required. It was there held that the trial court could permit such testimony in the exercise of its discretion. The court stated that any surprise resulting to defendant could be cured by a continuance.

■■■ Reviewing courts have consistently held that the trial court may properly permit an unlisted prosecution witness to testify where the witness is available to the defendant at trial prior to taking the stand. (*People v. Jordan*, 38 Ill. 2d 83, 230 N.E.2d 161; *People v. Oberlin*, 355 Ill. 317, 189 N.E. 333.) We believe this principle should apply with equal

force in the case of unlisted defense witnesses. The sanction here employed was in excess of that which was necessary and an abuse of discretion.

Although the trial court's ruling was error, we do not believe that the case should be reversed on this ground since the defendant failed to make an offer of proof. We cannot speculate as to the precise nature of the testimony of Mr. Sheridan.

■■ The defendant argues, in general terms, that Mr. Sheridan's testimony would have shown by physical measurement, the interrelationship between the doorway and the alleyway, and photographs would have demonstrated that Officer Rinehart could not possibly have seen the defendant. No offer of proof was made with respect to the lighting, distances or other physical characteristics discerned by the witness. Under these circumstances, we cannot speculate as to the nature of this testimony, and as to the strength or weakness of any inference thereof. We therefore hold that no prejudicial error resulted from the trial court's order excluding the testimony of Mr. Sheridan.

Defendant next claims the court erred in excluding evidence that a defense witness made a prior statement immediately after defendant's arrest, consistent with his in-court testimony. Defendant characterizes this witness as "crucial," since his testimony explained defendant's presence at the time and place of his arrest consistent with his innocence.

At trial, defense witness, James Mullins, testified that on the night of the burglary, the defendant had come to a laundromat across the street from the Second Chance Tavern to help Mullins start his car. Mullins testified that he had been doing his laundry in the early morning hours; that his car "froze up" in the extreme cold weather; that he telephoned defendant, who came to try to help him start his car. When the car repeatedly continued to "die," Mullins left defendant out to walk home. The location where Mullins testified he let defendant out was in close proximity to the place where he was arrested, and it was shortly before he was arrested.

On direct examination, the defendant attempted to elicit Mullins' testimony that, upon hearing of defendant's arrest, he immediately went to the police station and told an officer there that defendant could not have committed the burglary with which he was charged because defendant was just with Mullins. The People's objection to this line of questioning was sustained.

■■ Defendant contends that he should have been permitted to bolster the credibility of his only defense witness by offering proof that the witness had immediately made a prior statement consistent with his in-court testimony. The People argue the trial court correctly excluded

this testimony, since evidence of prior consistent statements is admissible, if at all, only to refute a charge or inference that the witness has fabricated his story, or is motivated to testify falsely. *People v. Clark*, 52 Ill. 2d 374, 288 N.E.2d 363.

A witness cannot testify that he made prior statements consistent with the account given at trial, even if he has been impeached by evidence showing he made prior inconsistent statements. (*People v. DePoy*, 40 Ill. 2d 433, 240 N.E.2d 616.) If, however, the People raise a charge or inference that the witness is motivated to testify falsely, or that his testimony is of recent fabrication, evidence is admissible that he told the same story before the motive came into existence or before the time of the alleged fabrication. *People v. Clark*, 52 Ill. 2d 374, 288 N.E.2d 363.

In the instant appeal, defendant sought admission of the prior consistent statement during the direct examination of the witness. At this time, the People had not made any charge or raised any inference that the defendant was motivated to testify falsely or that his story was a recent fabrication. Thus, at the time admission of the testimony was sought, its only purpose was to buttress or bootstrap the account of the witness. Under these circumstances, the testimony was properly excluded. No challenge had been made by the People to the witness' account given at trial, and testimony by the witness that he made a prior statement consistent with this account was therefore properly excluded.

Defendant next claims the prosecutor's conduct during final argument was prejudicial error, since the jury was advised that defendant could receive probation.

During final argument by defense counsel, the following occurred:

> "Now ladies and gentlemen, Mr. Hahn should not suffer the consequences of possibly going to the penitentiary because of a mistake."

The prosecution objected to this reference.

> "MR. STEIGHMANN: Your Honor, I object to any such reference. It's improper. Counsel knows it's improper. The question of sentencing is one for the Court. Probation is at least a possibility assigned to this Court. Conditional discharge, periodic imprisonment, any number of things. It's not a proper consideration for the jury in its deliberations.
>
> THE COURT: The objection is sustained. This is improper. The jury should disregard that and pay no attention to it.
>
> MR. STEIGMANN: Thank you, your Honor."

Defendant concedes that the prosecutor's objection to the defense argument was appropriate, but nevertheless urges that the prosecutor's statement before the jury of possible penalties was not justified and was

extremely prejudicial. *People v. Neeley*, 18 Ill. App. 3d 287, 309 N.E.2d 725.

■■■ We agree that the prosecutor's statement was unjustified. His objection, although proper, could have been stated differently, in order to minimize the possibility of prejudice, by stating, for example, that the question of punishment was solely for the court without going into specific alternatives. But defense counsel's remarks during argument were also clearly improper. The defendant may not complain of the prosecutor's closing argument where the defendant has invited or provoked that argument by his own improper argument. (*People v. Myers*, 35 Ill. 2d 311, 220 N.E.2d 297; *People v. Williams*, 7 Ill. App. 3d 261, 287 N.E.2d 186.) Defendant invited the remarks made by the prosecutor, and on this basis he has no cause to complain on appeal.

■■ Defendant next urges that he was denied a fair trial since the jury was not properly instructed upon a vital issue. The record discloses that the jury was instructed on the basis of IPI No. 14.06, defining the offense of burglary. Defendant contends this instruction failed to advise the jury that a conviction required a finding the defendant was in that portion of the building leased by the Second Chance, *i.e.*, the tavern and not merely the area common to other tenants. This contention has no merit. Defendant made no objection to the People's burglary instruction and failed to tender his own instruction. In any event the People's instruction was proper since a tenant with a present possessory interest has sufficient ownership under the burglary statute, and the property was sufficiently identified. *People v. Gregory*, 59 Ill. 2d 111, 319 N.E.2d 483; *People v. Kreisler*, 381 Ill. 453, 45 N.E.2d 653; *People v. Knox*, 98 Ill. App. 2d 270, 240 N.E.2d 426.

The defendant also claims the evidence was insufficient to sustain a conviction beyond a reasonable doubt. He urges the evidence was insufficient to prove defendant was the person observed for two seconds by Officer Rinehart in the furnace room, that the testimony of Officer Lynch was insufficient, and that, at most, the evidence supports a conviction for attempt burglary.

At the trial, Mr. Cecil Byrnes, owner of A-1 Alarm Service in Champaign, Illinois, testified that he supervised and helped in the installation of an A-1 burglar alarm on the internal door of the Second Chance. Mr. Byrnes explained how the perimeter alarm at the Second Chance had a protection circuit which, if broken, automatically transmitted an alarm to A-1's office where buzzers, horns and lights would go off. Mr. Byrnes described the alarm transmission as "split second." He then explained the procedure adopted by his office when the alarm is activated. The employee on duty stamps a card noting the time. The employee notifies the police department by a direct line, stamps the card

a second time, and notifies the subscriber of the premises where the alarm has been activated.

Mary Byrnes, who worked at A-1's office, testified that during the early morning hours of December 18, 1973, an alarm signal came in from the Second Chance. She stamped the Second Chance's card. The times on the card show that Mrs. Byrnes first stamped the card at 3:47 a.m. Mrs. Byrnes stated she then notified the Champaign police on the "hot line." She then stamped the card a second time at 3:47 a.m., when the police answered.

James Hausman, the communications operator on duty at the Champaign Police Department on the morning of December 18, 1973, testified that during that morning he received a call from A-1 Alarm Systems concerning the Second Chance. Mr. Hausman noted the time when he received that call as 3:47 a.m. He testified further that after he received the call from A-1, he communicated to police officers by radio, in order to dispatch police cars to the Second Chance.

Mary Byrnes, the employee at A-1's office, also notified Kenneth Urbanek, the manager of the Second Chance.

Believing that the janitor had set off the alarm, Urbanek dialed the number of the pay telephone, located in the center part of the Second Chance. According to Urbanek, the pay telephone rang three or four times before a man's voice answered. Not recognizing the voice, Urbanek asked who it was. The response was something like, "You don't know who it is," or "I'll bet you would like to know who it is and I am not going to tell you." At this point the receiver was hung up.

Officer Donald Rinehart testified that at approximately 3:47 a.m., he was in the vicinity of the Second Chance and was dispatched to an active alarm at that establishment. Upon arrival at the Second Chance, Officer Rinehart parked his squad car in front of the building and proceeded to check the front doors and windows. Since these doors and windows were secure, Officer Rinehart moved to the south end of the building and then proceeded to the north end. As he proceeded eastward, down the alley along the north side of the building, Officer Rinehart came to a dead end at the end of the building. At that location, he noticed a furnace room door. Above the door was a light.

Rinehart shined his light on the furnace room door, which he noticed was about two to three inches open. As he approached the door, it opened and a person looked out, saw Rinehart, and ducked back in the door. After the door was closed, Rinehart alerted the other officers in the area, and briefly waited by the door until he pushed it open. Rinehart stated he then heard Officer Lynch yell to Officer Franklin on the other side of the building that someone had just run out.

Officer Rinehart later examined the door, leading from the furnace room into the bar room of the Second Chance. He stated that the door

appeared to have been pried open, so that when the door opened, the alarm was activated. A photograph, admitted into evidence, showed the door to the bar and the pry marks on the door.

Officer Lynch testified that he pulled his squad car near the rear door of the Second Chance, when an individual ran out of the back door. This person ran about fifteen feet before he was out of Lynch's view. Lynch alerted Officer Franklin, and then began pursuit on foot. Lynch continued the chase, losing sight of the individual as the latter turned corners.

Thereafter, Lynch lost sight of the subject. When Lynch approached Matthew Street, he noticed that Officer Blackman and Deputy Mumm had the defendant in custody. Lynch testified that the individual in custody had the same appearance as the person he had chased.

A court of review should not reverse a conviction on the ground that the evidence is insufficient to sustain the findings of guilt unless it can be said that there is clearly a reasonable and well-rounded doubt of the guilt of the accused, and the verdict is palpably contrary to the weight of the evidence. (*People v. Perroni*, 14 Ill. 2d 581, 153 N.E.2d 578.) The trier of fact may draw inferences from the evidence presented, and those inferences should be accepted on appeal unless they are inherently impossible or unreasonable. (*People v. Dunham*, 13 Ill. App. 3d 784, 300 N.E.2d 328.) We believe that there was substantial direct and circumstantial evidence in the instant appeal to support the jury's verdict.

■■ Defendant argues that Officer Rinehart's identification of the defendant was insufficient to prove his guilt beyond a reasonable doubt because Officer Rinehart only viewed the defendant in the doorway of the furnace room for about two seconds. We believe the identification was sufficient.

■■ Defendant also urges that Officer Lynch's testimony was insufficient because Lynch's testimony, connecting defendant to the scene of the crime, was based on the similarity of clothing to that of a man he had been chasing. This argument has no merit. Lynch's testimony was properly considered by the jury in conjunction with the other evidence and testimony.

Defendant also argues that the evidence at most demonstrates the offense of attempt burglary. He relies on *People v. Urbana*, 18 Ill. 2d 81, 163 N.E.2d 511. In *Urbana*, the evidence showed that a hole had been drilled in a lock, but entry had not been effected. The court held that since there was no entry of the building, one of the essential elements of the crime of burglary was lacking, and a conviction for attempt burglary was affirmed.

■■ *Urbana* is clearly distinguishable from the instant appeal. Officer Rinehart testified that he examined the door which led from the furnace

room into the bar room of the Second Chance. He stated that the door appeared to have been pried on, and that when the door opened, it caused the burglar alarm to be activated. In addition, photographs were admitted into evidence showing the door to the bar and the pry marks on the door. We believe this evidence in conjunction with the evidence relating to the burglar alarm, and the evidence of Urbanek's telephone call to the pay telephone, all permitted the jury to find the defendant guilty of burglary.

Finally, defendant argues that the cause must be remanded for resentencing since the evidence at most supports a conviction for attempt burglary. We believe, however, that the evidence proved the defendant guilty of the crime of burglary beyond a reasonable doubt. For the foregoing reasons, the judgment of conviction of the circuit court of Champaign County is affirmed.

Judgment affirmed.

STENGEL and BARRY, JJ., concur.